THOMPSON *v.* KNICKERBOCKER ICE CO.

(*Common Pleas of New York City and County, General Term.* June 3, 1889.)

1. EVIDENCE—OF EXPERTS—HYPOTHETICAL QUESTIONS.

An hypothetical question put to a witness assumed that the commissioner of internal revenue had decided the question of defendant's liability to a tax on certain evidences of debt known as "ice tickets." The fact, as proved, was that the commissioner had only decided that another company, who had issued the same kind of tickets, was liable to the tax. *Held*, that the assumption was sufficiently accurate.

2. SAME.

Defendant's liability to the government on the basis of the commissioner's ruling being $168,178.27, that amount was properly assumed in the hypothetical question as "the amount involved" in the controversy in which plaintiff's services were rendered, although only about $20,000 thereof could have been collected by distraint.

3. ATTORNEY AND CLIENT—COMPENSATION.

Plaintiff, an attorney, was employed by defendant to contest the question of its liability to pay the tax on its "ice tickets," amounting to about $168,000, the commissioner's adverse ruling being then known, and he succeeded in obtaining the opinion of the attorney general that defendant was not liable, which opinion settled the matter. *Held*, that a verdict of $10,000 for plaintiff's services was not excessive.

Appeal from trial term.

Action by Philip B. Thompson, Jr., against the Knickerbocker Ice Company, to recover the value of legal services. The essential facts are as follows:

In December, 1888, defendant retained plaintiff, who is an attorney of Washington, D. C., to represent it before the internal revenue department of the

United States, in a matter then pending therein, involving the question of the liability of defendant to taxation under Rev. St. U. S. §§ 3408, 3412, 3413, as amended by act of February 8, 1875. The question arose as follows: The Knickerbocker Ice Company, each year during the season for gathering ice, would issue at the close of each day's work to its workmen pasteboard cards, commonly known as "ice tickets," containing a statement of the amount due from it to the workmen to whom they were issued. These tickets were in the following form:

| |
|---|
| Good for Twelve ½ Cents. |
| JOLLY ISLAND.                         KNICKERBOCKER ICE COMPANY, |
| ROBERT MACLAY, |
| Prest. |

Some of these tickets found their way from the workmen, to whom they were issued, to the trades-people in the neighboring country, and thence into the local banks, and were all taken up and paid by defendant within a short time after they were issued. The section of the Revised Statutes referred to, as amended by the act of February 8, 1875, reads as follows: "Sec. 19. That every person, firm, association, other than national banking associations, and every corporation, state bank, or state banking association, shall pay a tax of ten per centum on the amount of their own notes used for circulation, and paid out by them." The government claimed that these tickets were "notes," within the meaning of this statute, "used for circulation, and paid out" by the defendant. Prior to the time of plaintiff's retainer by defendant, a letter had been written by Mr. Miller, the commissioner of internal revenue, to the Consumers' Ice Company, which company had also used similar "ice tickets," in which he expressed it to be his opinion that the corporations and individuals issuing such tickets were liable to taxation under the above sections, and requested it to make its return of the quantity of tickets issued by it to the collector of taxes. A letter quoting at length portions of this letter to the Consumers' Ice Company was afterwards sent by the commissioner to the Knickerbocker Ice Company. The government could assess and summarily collect from defendant without litigation only the tax which accrued during the 15 months immediately preceding an assessment thereof. In regard to the tax which accrued prior to the 15 months immediately preceding the making of an assessment, the government would have to bring an action and establish defendant's liability in the courts before it could collect any tax to which defendant was liable. The total amount of tickets issued by defendant during the 15 months immediately preceding the government claim amounted to $189,868.84. The total amount of tickets issued by defendant for the whole period of their issuance was $1,681,783.76. On December 21, 1887, plaintiff presented a petition and brief to Internal Revenue Commissioner Miller for the purpose of inducing the commissioner to transmit the matter to the head of his department, the secretary of the treasury, in order that the latter might obtain the opinion of the attorney general of the United States on the question of defendant's liability to the tax. On January 23, 1888, the matter was transmitted by the commissioner to the secretary of the treasury, with a request that the latter obtain the opinion of the attorney general on the question of defendant's liability to the tax. The opinion of the attorney general on the question of the company's liability was asked by the secretary of the treasury, and plaintiff submitted a brief to the attorney general, and argued the case orally before him. On February 23, 1888, an opinion was delivered by the attorney general, in which he expressed himself

as being satisfied that the "ice tickets" were not "notes intended for circulation," within the meaning of the statute.    On February 29, 1888, plaintiff rendered a bill to defendant for $10,000 for his services in the matter.    There was no agreement made between the parties as to what plaintiff's compensation should be.    Plaintiff had a verdict and judgment for $10,000, and defendant appeals.

Argued before LARREMORE, C. J., and DALY and BOOKSTAVER, JJ.

*Maclay & Forrest*, for appellant.    *John J. Adams*, for respondent.

BOOKSTAVER, J.    The action was brought by an attorney to recover for legal services rendered the defendant.    Several witnesses were examined in Washington under commission, to prove the value of these services.    In order to do this, hypothetical questions were put to them.    Defendant contends that the answers to these questions were erroneously admitted in evidence, under defendant's objection, because the questions involved assumptions at variance with the facts established on the trial.    Although there were several of these questions, the substance of each, and the objections to each, were the same, and they may be considered together.    The principal variances claimed are two: *First*, it was assumed that the commissioner of internal revenue at Washington had decided the question of defendant's liability to a tax on certain evidences of debt issued by it to its workmen, known as "ice tickets," whereas in fact, as is claimed by the defendant, no such decision had been made by him; *second*, the amount of defendant's "liability," or the "amount involved," was assumed to be $168,178.27, whereas in fact defendant claims it was less than $20,000.

The rule in regard to such questions, as stated by Judge RAPALLO in *People* v. *Augsbury*, 97 N. Y. 505, 506, is: "Hypothetical questions are allowed to be put to experts, but the hypothesis upon which they are examined must be based upon facts admitted or established by the evidence, or which, if controverted, the jury might legitimately find on weighing the evidence."    Although this was announced in a criminal case, we think the rule is no stricter in civil actions.    Indeed, in the latter class of actions we think it is sufficient if the facts stated are substantially, and not literally, the same as the facts proved, (*Williams* v. *Brown*, 28 Ohio St. 547; *Covey* v. *Campbell*, 52 Ind. 158,) so long as neither the witness nor the jury are misled by the variation.    The questions put, however, contain a very material variation in both the respects mentioned, if the facts proved on the trial are as claimed by the defendant.    It appears from Exhibit D, in evidence, and the testimony of the commissioner of internal revenue, and of the respondent, that the commissioner had decided that the "ice tickets" issued by the Consumers' Ice Company, in all respects like those issued by the defendant, were subject to a tax of 10 per cent., and that the defendant was liable to such tax on the tickets issued by it as well as the Consumers' Ice Company on their tickets, and on this evidence the jury might well have found that the commissioner had in effect decided defendant's liability on those tickets, and therefore we think the evidence warranted the assumption in that respect in the hypothetical question.

As to the extent of defendant's "liability" or "the amount involved" in the controversy, the evidence before referred to, together with defendant's return to the government and Mr. Forrest's testimony, would have abundantly justified the jury in finding that $168,178.27 was involved in the entire controversy, although only about $20,000 could have been obtained by distraint, leaving the rest to be recovered by action, in the event the commissioner's decision had been adhered to.    The question was not as to the remedy of the government, and for the purpose of that question enough had been shown in the evidence to warrant the assumption in that part of the hypothetical question.    The exceptions to the judge's refusal to charge that no weight should be given to the testimony of experts based upon the hypothetical question,

of course, falls with the objections to the questions. The other exceptions to the charge fall with these.

Appellant claims that the damages awarded were excessive. Although the verdict seems large, yet there was abundant testimony, if relied on by the jury, to support it. Considering the condition of the controversy when plaintiff was retained, the delicacy required in its management, and the amount involved, we cannot say that the verdict was so clearly excessive as to warrant us to set it aside and send the case to another jury, who must decide it on the same state of facts. The judgment is therefore affirmed, with costs.